# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DEVELL MOORE,<br><br>Petitioner,<br><br>v.<br><br>LEGRAND, *et al.,*<br><br>Respondents. | Case No.: 3:13-cv-00390-LRH-WGC<br><br>**ORDER** |

This habeas petition is before the court for a decision on the merits (ECF No. 32). Respondents filed an answer (ECF No. 40), and petitioner Devell Moore filed a reply (ECF No. 45).

**I.    Procedural History and Background**

In 2009, a jury found Moore guilty of 3 counts of sexual assault of a minor under age 14 and 1 count of lewdness with a child under age 14 (exhibit 13).[1]  The state district court sentenced him to 3 consecutive terms of life with the possibility of parole after 35 years with a concurrent term of life with the possibility of parole after 10 years. Exh. 14.  Judgment of conviction was entered on February 3, 2010.  Exh. 15.

---

[1] Exhibits referenced in this order are found at ECF Nos. 19-21, 36.

The Nevada Supreme Court affirmed Moore's convictions, affirmed the denial of Moore's state postconviction petition, and denied a motion for rehearing of the petition. Exhs. 21, 27, 29.

On July 19, 2013, Moore dispatched his federal habeas petition for filing (ECF No. 6). Ultimately, this court appointed the Federal Public Defender as counsel for Moore. Respondents have now answered the petition (ECF No. 40).

**II. LEGAL STANDARD -Antiterrorism and Effective Death Penalty Act (AEDPA)**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts

with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

///

3

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### III. Instant Petition

**Ground 1**

Moore asserts that his Fifth and Fourteenth Amendment rights were violated by the trial court's failure to grant his request to exclude his taped confessional statement where he failed to explicitly waive his Miranda rights and where the circumstances of the in-custody interview rendered his statement involuntary (ECF No. 32, pp. 12-14).

4

The Fifth Amendment to the United States Constitution guarantees the privilege against self-incrimination. In *Miranda v. Arizona*, 384 U.S. 436 (1996), the Supreme Court established procedural safeguards to protect the exercise of the privilege against self-incrimination. Prior to questioning, law enforcement must inform the suspect of his or her right to remain silent and the right to have counsel present during interrogation. A suspect has the right to cut off questioning at any time. *Id*.

After Moore was arrested, he was taken to an interview room at the police station. The detective who questioned Moore first read Moore his Miranda rights, and Moore stated that he understood his rights. Exh. 3. Moore then confessed to the crimes charged. The transcript reflects that Moore answered the detective's questions and never invoked his right to remain silent or to have counsel present. Moore did indicate that he needs "mental help" because he makes bad judgments, but his statements are coherent, often detailed, and responsive to the questions. The detective relayed the accusations and Moore responded: "I foolishly have made the wrong judgment and do the wrong thing, and I really just—I've, I've even told uh, my fiancé that I need mental help on a lot of situations because I get very hostile . . . um, just bad judgment . . . . my mental is truly off." Moore also responded to questions with specifics about the types of abuse, and where and when the abuse took place. *Id*. At trial, the State played the tape of Moore's statement to police. Exh. 10, p. 31.

Affirming the convictions, the Nevada Supreme Court denied the claim:

> Moore contends that the district court erred by denying his motion to suppress his confession because it was involuntary and obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). We disagree. After the interviewing detective recited Moore's Miranda rights, Moore stated that he understood them and never unambiguously invoked his right to remain silent. *See Berghuis v. Thompkins*, 560 U.S. __, __, 130 S. Ct.

2250, 2259-60 (2010). Further, a review of the factors he cites in support of his brief argument that his confession was involuntary do not lead us to conclude that substantial evidence does not support the district court's conclusion. *See Rosky v. State*, 111 P.3d 690, 694 (2005).

Exh. 21 at 1.

Moore has not demonstrated that the in-custody interview violated his Miranda rights. The Nevada Supreme Court's adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; nor was its decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 1.

**Ground 2**

Moore argues that the trial court violated his Fourteenth Amendment equal protection and fair trial rights when it allowed the prosecution to use its peremptory challenges to exclude 2 prospective jurors (ECF No. 32, pp. 14-17).

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court held that the Equal Protection Clause guarantees defendants that prosecuting authorities will not exclude members of a protected minority class from the jury venire pool solely based on race. The Court subsequently pronounced a three-part test for determining whether a prospective juror has been impermissibly excluded:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful discrimination.

*Purkett v. Elem*, 514 U.S. 765, 767 (1995).

6

The state-court record reflects that during jury selection defense counsel moved for a mistrial, arguing that the State had violated *Batson*. Counsel argued that the fact that the State excused a Hispanic juror and an African-American juror showed a pattern of discrimination against minority prospective jurors. Exh. 9, pt. 1, pp. 3-8. The State first argued that striking two jurors is hardly a pattern. They further responded that they used a peremptory strike against the African-American woman in question because she stated that she had a brother in prison related to drug, prostitution, and trafficking convictions. She had also said that her brother was wrongfully imprisoned due to a girl lying about her age to police. The district attorney noted "she couldn't be more right to put off my jury, whatever color her skin was." *Id.* at 4.

With respect to the Hispanic prospective juror, the State said they primarily wanted to use the strike in order to "get to the pool" because there were a couple of upcoming prospective jurors that they viewed as favorable. The prosecutor also noted that the prospective juror seemed particularly gullible. The prosecutor observed that the State had only exercised 4 peremptory strikes and also that the defense had used peremptory strikes against 3 Hispanics and an African American woman.

The state district court denied the motion for mistrial, concluding that the State "sufficiently articulated the reasons for their challenges per *Batson*." The court also observed that in its view the jury pool and the jury as selected were sufficiently diverse. *Id.* at 6.

The Nevada Supreme Court denied the claim on direct appeal, stating:

> Moore claims that the district court erred in denying his motion for a mistrial pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). In his motion, Moore alleged that the State used two of its four peremptory challenges in a discriminatory manner. The State offered the following explanations for

7

> striking the two minority panel members: (1) juror Barber because her brother was tried for pandering and drug trafficking and she believed he was treated unfairly by police and (2) juror Enriquez because she appeared gullible and easily persuaded by the defense's theory of the case. The district court ruled that these rationales were not pretextual, and we also conclude that, because "discriminatory intent is not inherent in the State's explanation[s]," and those explanations are not "implausible or fantastic," the district court did not clearly err in rejecting Moore's *Batson* challenge. *Ford v. State*, 122 Nev. 398, 403, 404, 132 P.3d 574, 578 (2006).

Exh. 21 at 1–2.

There is no support for Moore's claim that the trial court failed to engage in an analysis of the validity of the prosecutor's explanations. The Nevada Supreme Court's adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; nor was its decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. § 2254(d). Accordingly, Moore is not entitled to federal habeas relief on ground 2.

**Ground 3**

Ground 3 alleges ineffective assistance of defense counsel in violation of Moore's Sixth and Fourteenth Amendment rights (ECF No. 32, pp. 17-19). Ineffective assistance of counsel (IAC) claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing

*Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to

10

incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

Here, Moore asserts that his counsel was ineffective for failing to investigate Moore's competency in light of Moore's irrational rejection of a guilty plea deal (ECF No. 32, pp. 17-19). Moore notes that medical staff at Clark County Detention Center prescribed him 2 antidepressants. Defense counsel did not have Moore's competency evaluated. Moore contends that after the victim failed to appear in justice court the State offered a plea agreement whereby Moore would be eligible for release in 8 years. Moore rejected the offer and proceeded to trial. *Id.* Moore includes a 2013 letter from defense counsel that states that, according to her notes in the file, the State offered 8-to-life on the day that the preliminary hearing was scheduled but the victim was not present, which Moore rejected.

The state district court dismissed the claim because it was alleged in such a cursory and unspecific manner as to be insufficiently pleaded. Exh. 24 at 4. Moore appealed, and the Nevada Supreme Court affirmed the denial of Moore's petition, stating:

> [A]ppellant claimed that counsel failed to seek a pretrial competency evaluation as appellant asserted he used antipsychotic medication during trial. Appellant failed to demonstrate that counsel's performance was deficient or that he was prejudiced. That appellant used medication during trial was insufficient to demonstrate that he did not have the ability to consult with his attorney with a reasonable degree of rational understanding and that he did not have a factual understanding of the proceedings against him. *See Melchior-Gloria v. State*, 99 Nev. 174, 179-80, 660 P.2d 109, 113 (1983) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Appellant failed to demonstrate a reasonable probability of a different outcome had counsel sought a pretrial competency evaluation. Therefore, the district court did not err in denying this claim.

Exh. 27 at 3.

In his federal petition, Moore mischaracterizes the references he made to his mental health in his voluntary statement to the detective. As noted above in the discussion of ground 1, Moore *did* state that he needed mental health assistance. But any fair reading of his statements reveal that he was focused on having exercised bad judgment: "I made the wrong the judgment instead of being like a father figure and saying—no . . . . I'm sayin', would make the wrong mental judgment." "But I know I have this feeling towards, you know, the way I look at little girls, and I know it ain't right so, you know, mentally it's wrong." Exh. 3. Moore has not shown that a competency evaluation had a reasonable probability of changing the result of the trial. Further, the 2013 letter from the public defender—referencing her 2008 notes—is the sum total of information or evidence about the plea deal. Moore has failed to demonstrate that the Nevada Supreme Court's decision was contrary to or involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as ground 3.

Accordingly, the petition is denied in its entirety.

IV. **Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has sua sponte evaluated the claims within the petition for suitability for the issuance of a COA. See 28 U.S.C. § 2253(c); Turner v. Calderon, 281 F.3d 851, 864-65 (9th Cir. 2002).

///

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Moore's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any of Moore's claims.

**IT IS THEREFORE ORDERED** that the third-amended petition (ECF No. 32) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

Dated: March 28, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE